GALLOWAY FARMS, INC., Julian C. Galloway, Elsie Galloway, James T. Galloway, and Marilyn Galloway, Plaintiffs–Appellants,

v.

The UNITED STATES of America, Richard E. Lyng, Secretary of Agriculture, and John Block, Secretary of Agriculture, Defendants–Appellees.

No. 87–1458.

United States Court of Appeals, Federal Circuit.

Dec. 2, 1987.

Marlyn S. Jensen, P.C., Osceola, Iowa, argued for plaintiffs-appellants.

Julie Zatz, Dept. of Justice, Washington, D.C., argued for defendants-appellees. With her on brief, were Richard K. Willard, Asst. Atty. Gen., Christopher D. Hagen, U.S. Atty. and Paul F. Figley.

Before ARCHER, Circuit Judge, NICHOLS, Senior Circuit Judge, and MAYER, Circuit Judge.

NICHOLS, Senior Circuit Judge.

The Eighth Circuit transferred this appeal to the Federal Circuit pursuant to the provisions of 28 U.S.C. § 1631 (1987). We affirm the district court's dismissal of appellants' claims which was based on jurisdictional defects and substantive meritlessness in unstated proportions.

## Background

Appellants are the owners of a family-run farm in Iowa producing various wheat, other grain and farm products. In 1980, President Jimmy Carter imposed a grain embargo on the Soviet Union—pursuant to the authority vested in the President under the Export Administration Act of 1979, 50 U.S.C.App. §§ 2401 *et seq.* (1980)—in response to the U.S.S.R.'s invasion of Afghanistan. Appellants claimed severe losses due to the implementation of the embargo (Joint Appendix, hereinafter J.A., at 78) and to adverse weather conditions. They applied for disaster relief from various authorized government agencies and all their applications were denied. (J.A. at 47–51) Appellants then attempted to obtain relief from other government entities, each attempt resulting in ultimate denials. They assert they were further harmed because the Department of Agriculture assessed the cost of producing grain incorrectly and so reported to Congress.

Following their failure to obtain relief, appellants filed suit on January 14, 1985, in the Southern District of Iowa against the United States and two Secretaries of Agriculture, one a former holder of the office, alleging several violations of various statutes and constitutional rights, basing jurisdiction on: (1) the Little Tucker Act (LTA) as to uncompensated takings, 28 U.S.C. § 1346(a)(2) (1982); (2) the Federal Tort Claims Act, 28 U.S.C. § 1346(b); (3) a breach of the Secretary of Agriculture's general duties and negligent and *ultra vires* performance of other duties; (4) unlawful revocation of the Economic Stabilization Act; and (5) intentional infliction of emotional distress.* They claimed money damages in amounts largely exceeding the LTA $10,000 jurisdictional ceiling, and there does not seem to be any claim for prospective relief in the case. After hearings in the district court, Judge W.C. Stuart summarily dismissed plaintiffs' claims. He did not provide a fully reasoned opinion, only oral remarks from the bench. Clearly he did not consider any cause of action was stated. He thought plaintiffs' main problem they failed to overcome was the absence of sufficient waiver of sovereign immunity to meet their needs.

Upon dismissal, plaintiffs appealed the decision, *in toto,* to the Eighth Circuit. After the filing of the appeal, plaintiffs' motion was granted, transferring the case to the Federal Circuit.

## Issue

The most important issue at hand is whether the Federal Circuit has jurisdiction to consider this appeal in its entirety or must transfer all or parts of it to some other court.

## Jurisdiction

■ The applicable waivers of sovereign immunity are the "Little Tucker Act," 28 U.S.C. § 1346(a)(2) and the Tort Claims Act which follows in section (b). No others are invoked or need be considered despite the length of the list of statutes appellants say were violated. Federal Circuit jurisdiction is predicated upon 28 U.S.C. § 1295(a)(2) (1982) stating that all cases based in *whole or in part* on the Little Tucker Act, come on appeal exclusively before the Federal Circuit. *United States v. Hohri,* —— U.S. ——, 107 S.Ct. 2246, 2253, 96 L.Ed.2d 51 (1987). The Eighth Circuit transferred the entire case here, including its counts sounding in tort, because of the *Hohri* interpretation. Tucker Act claims must be brought in either a federal district court or the United States Claims Court depending on the amount of damages asserted. Justice

---

* In oral argument below, counsel explained the count for intentional infliction of emotional distress by reference to *Gross v. United States,* 723 F.2d 609 (8th Cir.1983) and earlier decisions on the same claim cited therein. The connoisseur of the legally preposterous may wonder if here is a prize enhancement to his collection. A reference to the cited opinion shows it was a Tort Claims Act case decided by application of South Dakota law to a purely local dispute between a farmer and a local Department of Agriculture committee. It makes sense with respect to the actual circumstances therein dealt with but does not with respect to a presidential embargo on sales to Russia, or acts of a Secretary of Agriculture in the performance of broad policy-making functions.

Powell states the factors used to determine the appropriate forum for such claims:

> [T]he * * * Act grants the United States Claims Court jurisdiction of similar claims without regard to the amount of the claim. 28 U.S.C. § 1491(a)(1). Thus, Tucker Act claims for more than $10,000 can be brought only in the United States Claims Court. Claims for less than $10,000 generally can be brought either in a Federal District Court or in the United States Claims Court.

*Id.*, 107 S.Ct. at 2249 n. 1.

The statute is designed to limit district court, not Claims Court, jurisdiction by amount. A claim such as we have here under the LTA for more than $10,000 brought in district court fails to accord the district court jurisdiction because it contravenes the express language of the statute. Under similar circumstances this court recently held:

> [T]he district court had no jurisdiction over her suit. In her complaint, Bragg asserted that the district court's jurisdiction was based on federal question jurisdiction, 28 U.S.C. § 1331 (1982), and, with respect to her monetary claims, admits that she is relying on the Tucker Act, 28 U.S.C. § 1346(a)(2). Under 28 U.S.C. § 1346(a)(2), however, the district court loses jurisdiction which it shares with the Claims Court once plaintiff's claim exceeds $10,000. * * * In view of the amount of her claim, the district court was without subject matter jurisdiction, * * *.

*Bragg v. Keohane*, 820 F.2d 402, 403 (Fed.Cir.1987). *See also Bray v. United States*, 785 F.2d 989, 994 (Fed.Cir.1986). This court has the authority to determine the subject-matter jurisdiction of the district court. *Id.* We determine that the district court had no subject-matter jurisdiction over the LTA claims. This does not apply, however, to the Tort Claims Act claim as the court clearly would have jurisdiction over a properly pleaded Tort Claims Act claim.

Regardless, however, of fatal jurisdictional imperfections under some counts, justice requires, in certain instances, that other claims be placed before an appellate tribunal having jurisdiction pursuant to the transfer provisions of section 1631. *See Williams v. Department of Army*, 715 F.2d 1485, 1491 (Fed.Cir.1983) (whether Federal Circuit may entertain appeal of its part of a mixed issue MSPB appeal which could be bifurcated where Congress intends another part embodying discrimination claims to be decided elsewhere); *see also Hempstead County & Nevada County Project v. U.S. Environmental Protection Agency*, 700 F.2d 459, 463 (8th Cir. 1983). Section 1631 provides in pertinent part:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought * * *.

28 U.S.C. § 1631.

The phrase "if it is in the interest of justice" relates to claims which are nonfrivolous and as such should be decided on the merits. *Zinger Construction Co. v. United States*, 753 F.2d 1053, 1055 (Fed.Cir. 1985). Frivolous claims include "spurious and specious arguments" and "distortion and disregard of the record and opposing authorities, [which] indicate plainly that the present appeal does not rest on the razor's edge of frivolity, but falls clearly on the side of the frivolous." *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1068, 3 USPQ2d 1288, 1294 (Fed.Cir.1987). Other circuits have succinctly defined frivolous claims or appeals as those which involve "legal points not arguable on their merits," *Caldwell v. Palmetto State Savings Bank of S.C.*, 811 F.2d 916, 919 (5th Cir.1987); *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1161 (5th Cir.1985); *Olympia Co. v. Celotex Corp.*, 771 F.2d 888, 893 (5th Cir.1985), or those whose disposition is obvious. *Reliance Insurance Co. v. Sweeney Corporation, Maryland*, 792 F.2d 1137,

1138 (D.C.Cir.1986); *Gattuso v. Pecorella*, 733 F.2d 709, 710 (9th Cir.1984); *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 74 (1st Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). In the language of courts, frivolity does not imply levity, and is not inconsistent with a litigant's belief that he has been wronged and ought to have a remedy.

This court itself has determined how to handle such claims in *Zinger Construction Co. v. United States*. In *Zinger*, this court lacked jurisdiction over an appeal from the Armed Services Board of Contract Appeals, but held, after examining the merits, that:

> It is evident after all the attention given to Zinger's claim that there is no merit to it. Pursuant to discretion vested in this court by 28 U.S.C. § 1631 (1982), we should transfer the case to the United States Claims Court *if we find that to do so would be in the "interest of justice."* On this record, we cannot so find. [Emphasis supplied.]

*Id.* at 1055. *See also Bray*, 785 F.2d at 994.

Possible transfers under section 1631 of part of the case, the Tucker Act claim, to the Claims Court or of other parts, those cognizable under the Tort Claims Act to the Eighth Circuit, are the only alternatives to plain and simple affirmance. The whole case could not be sent to any one court. Courts have exercised their section 1631 transfer powers but not usually, or preferably, in the form of bifurcation of claims. *See Williams*, 715 F.2d at 1489; *A.L. Rowan & Son v. Department of Housing and Urban Development*, 611 F.2d 997, 1001 (5th Cir.1980). Each tribunal has taken great pains to avoid "the tremendous waste of judicial resources that bifurcation of one case between * * * courts would inevitably entail." *Williams*, 715 F.2d at 1489, quoting *Wiggins v. United States Postal Service*, 653 F.2d 219, 221–22 (5th Cir.1981). Decisions not to split issues comport not only with notions of judicial fairness and efficiency, but also with congressional preference for combining various aspects of one case under "one review proceeding." *Christo v. Merit Systems Protection Board*, 667 F.2d 882, 883 (10th Cir.1980); *A.L. Rowan*, 611 F.2d at 1001 (rather than split contract and unjust enrichment (equitable) claims, the court permitted transfer completely and solely of all claims to the Court of Claims when they arose out of the same transaction). *See also Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1435 (Fed.Cir.1984) (majority notes that the jurisdictional statute, 28 U.S.C. § 1295(a)(1) governing section 1338 claims, "reflects an intent to avoid bifurcation of appeals"). Because this court considers all the claims frivolous, it does not retransfer any part of the case. The following sections demonstrate with clarity the frivolity of appellants' substantive claims.

### Takings Claims

■ Appellants assert that the 1980 embargo resulted in an unconstitutional taking of their property in contravention of the fifth amendment. They do not allege they had contracts that the embargo frustrated yet argue that the embargo acted as do governmental regulations which deprive individuals of the economic use of their property. The validity of embargoes as congressionally authorized executive action is hornbook law. *Horowitz v. United States*, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736 (1925); *The Legal Tender Cases*, 79 U.S. (12 Wall.) 457, 550, 20 L.Ed. 287 (1870); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 191–92, 6 L.Ed. 23 (1824). As Chief Justice Marshall stated in the seminal case of *Gibbons v. Ogden* referring to Jefferson's embargo of 1807:

> The universally acknowledged power of the government to impose embargoes, must also be considered * * *. An embargo may be imposed for the purpose of facilitating the equipment or manning of a fleet, or for the purpose of concealing the progress of an expedition preparing to sail from a particular port. * * * They are sometimes resorted to * * * with a single view to commerce. * * * [T]he avowed object of the law was, the protection of commerce, * * *. By its friends and its enemies it was treated as a commercial * * * measure.

*Gibbons*, 22 U.S. (9 Wheat.) at 191–92. *See also Legal Tender Cases*, 79 U.S. (12 Wall.) at 550.

The appellants have no ground and do not challenge the validity of the embargo. The question then remains, whether the asserted taking, for which the embargo was the catalyst, was compensable. The Supreme Court has held that embargoes resulting in losses based on commercial interference are not remediable at law.

> A new tariff, an embargo, a draft, or a war may inevitably bring upon individuals great losses; may, indeed, render valuable property almost valueless * * *.

*Legal Tender Cases*, 79 U.S. (12 Wall.) at 551.

> The conclusion * * * is, that for [such] consequential loss or injury resulting from lawful governmental action, the *law affords no remedy*. (Emphasis supplied.)

*Omnia Commercial Co. v. United States*, 261 U.S. 502, 510, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923).

To the same effect in an active embargo case is *Horowitz v. United States, supra.* Our predecessor, the Court of Claims, so held in *Anglo American Trading Corp. v. United States*, 109 Ct.Cl. 859 (1948). The Supreme Court has often applied this principle. *See Andrus v. Allard*, 444 U.S. 51, 68, 100 S.Ct. 318, 328, 62 L.Ed.2d 210 (1979); *Everad's Breweries v. Day*, 265 U.S. 545, 44 S.Ct. 628, 68 L.Ed. 1174 (1924); *Omnia Commercial Co., Inc. v. United States*, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923); *Jacob Ruppert, Inc. v. Caffey*, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260 (1920). Other cases this court discusses in *Florida Rock Industries, Inc. v. United States*, 791 F.2d 893 (Fed.Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987); *cf. Langenegger v. United States*, 756 F.2d 1565 (Fed.Cir.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887), involved a state law prohibiting the manufacture of beer, making plaintiff's brewery worthless. It was held just compensation was not required. Under the fourteenth amendment, the state's obligation would be the same as the Federal Government's. Questions have been raised as *e.g.* in *Florida Rock, supra*, regarding the validity of *Mugler* after the decision of *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). But the Supreme Court in *Keystone Bituminous Coal Ass'n v. DeBenedictis*, —— U.S. ——, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987), a takings case, cited *Mugler* favorably and laid any doubts to rest: "We reject petitioners' implicit assertion that *Pennsylvania Coal* overruled these cases [*Mugler*, etc.] * * *." *Id.*, 107 S.Ct. at 1244.

In *Omnia Commercial Co. v. United States*, a Tucker Act case, the government seized production of steel mills for wartime purposes, causing Omnia Commercial Co. to lose $990,000 because it was unable to buy steel for which it had a contract at below market prices. The Court held that the rights of Omnia under a lawful, binding contract were property for fifth amendment purposes, but were uncompensable if frustrated. Justice Sutherland, speaking for the majority, held:

> [D]estruction of, or injury to, property is frequently accomplished without a "taking" in the constitutional sense. * * * There are many laws and governmental operations which injuriously affect the value of or destroy property * * * but for which no remedy is afforded.

*Omnia*, 261 U.S. at 508–09, 43 S.Ct. at 437–38.

The case is still often cited. Appellants fall within the strictures described in *Omnia* and *Legal Tender*. As such, their "taking" does not reach constitutional magnitude and is not compensable.

While *Omnia Commercial Co.* deals with government frustration of a purchase, *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 178 Ct.Cl. 599 (1967), is on its facts, even more directly on point as the Tucker Act claim there was for government frustration of a foreign sale. The claim was not stated as for an alleged taking of the property, a ship, but the opinion is broad enough to have covered a taking count if one had been alleged. Re-

lief was denied and the case has very often been cited and relied on, including by the Supreme Court in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

More recently, in *Andrus,* the Court reviewed appellant government's argument that a district court opinion finding an unconstitutional taking was wrong. Appellees were prosecuted under the Eagle Protection Act and Migratory Bird Treaty Act for selling artifacts ornamented with bald and golden eagle feathers. The district court held that feathers obtained and artifacts originating prior to the acts' passage were outside the scope of the Acts. As such, any seizure of such items was an unconstitutional taking. In reversing, Justice Brennan stated that:

> [A] significant restriction has been imposed on one means of disposing of the artifacts. But the denial of one traditional property right does not always amount to a taking. * * * [A] reduction in the value of property is not necessarily equated with a taking.

*Andrus,* 444 U.S. at 65–66, 100 S.Ct. at 327.

The Court continues by noting that "[r]egulations that bar trade in certain goods have been upheld against claims of unconstitutional takings," *id.* at 67, 100 S.Ct. at 327, citing to *Everad's* and *Jacob Ruppert* for support. In earlier years, for example, the Court sustained regulations prohibiting the "sale of alcoholic beverages despite the fact that individuals were left with previously acquired stock." *Id.* quoting generally *Everad's Breweries,* 265 U.S. at 562–63, 44 S.Ct. at 632–33.

The embargo in question restricted trade in wheat or grain, just as *Andrus* and *Everad's* restricted the sale of eagle artifacts and liquor. It closed one market but left others open in contrast to some actions which close all markets. Appellants' contentions fall squarely within the type of claims asserted in *Omnia, Andrus,* and *Everad's* and such regulation does not constitute a taking. The Claims Court would have subject-matter jurisdiction of this claim because it is for over $10,000 compen-sation, but justice does not require transfer to that court in view of its frivolity.

## Federal Tort Claims Act Claims

President Carter imposed a grain embargo against the Soviet Union on January 4, 1980. Appellants filed their administrative claims for relief from the alleged damages caused by the embargo and disastrous weather conditions with the Department of Agriculture on January 14, 1985, a full five years after the imposition of the embargo. Each of appellants' claims was denied on October 16, 1985 (J.A. at 47–51). Appellants then filed suit in the district court of Iowa on April 11, 1986 (J.A. at 1–26). The district court dismissed the Federal Tort Claims Act allegations, by unpublished order dated January 12, 1987 (Stuart, J.), because, in its considered opinion, the statute of limitations had run on the claims.

Title 28, United States Code § 2401(b) prescribes the time period within which tort claims against the United States must be asserted:

> (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

Appellants failed to file for damages with the Department of Agriculture within the required two-year period—the embargo being instituted on January 4, 1980, and the appellants filing their claims for the *first* time on January 14, 1985.

■ However, appellants did file suit within the prescribed period of limitation under the second half of section 2401(b), *i.e.,* filing suit within six months after the date of mailing of the notice of final denial. Mr. Kenneth Cohen's letters, denying appellants all their requested relief, are dated October 16, 1985 (J.A. 47–51). Appellants brought suit on April 11, 1986, a few days within the six-month statutory period. The

trial court considered the question, stating that even if the statute of limitations had not run, appellants' claims were barred by the discretionary functions exception of 28 U.S.C. § 2680(a). We agree with Judge Stuart's reasoning as noted in this opinion *infra.*

■ Even if the statute of limitations had not run, the Federal Tort Claims Act does not authorize suits against officials for exercising discretionary, policymaking functions. 28 U.S.C. § 2680(a); *see also United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813–14, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984); *Dalehite v. United States*, 346 U.S. 15, 34–35, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953). The traditional separation of functions revolves around whether the duty is ministerial or discretionary. Discretion requires the executive or administrator to act according to his judgment. *Dalehite*, 346 U.S. at 34, 73 S.Ct. at 967; *see also Varig Airlines*, 467 U.S. at 813–14, 104 S.Ct. at 2764. No Federal Tort Claims Act suit will lie when the conduct in question involves "the initiation of programs and activities," *Dalehite*, 346 U.S. at 35, 73 S.Ct. at 968, or "determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." *Id.* at 35–36, 73 S.Ct. at 968. *See also Berkovitz v. United States*, 822 F.2d 1322, 1329–32 (3rd Cir. 1987). Based on the appellants' allegations, it is clear from the record and oral argument that the functions involved were discretionary in nature and outside the scope of the Federal Tort Claims Act. Appellants say some of the Secretaries' duties were ministerial, but make no serious effort to deal with the authoritative case law on the discretionary function exemption. The Tort Claims Act claims are frivolous and justice therefore does not require their transfer to any other circuit court.

### Cort v. Ash Claims

■ Appellants further assert that the two Secretaries of Agriculture, named defendants, acted negligently breaching their duties to the appellants. Appellants premise their arguments on several statutes. (J.A. at 3–9; 11–18) none of which grants them a private right of action against the Secretaries, or suggests in any way that the Secretaries are personally liable for nonperformance. The district court apparently did not pass on the issue which, in any event, we find to be frivolous.

The question of private rights of actions against officials in their official and personal capacities has not been the same since *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *See also Burroughs v. Hills*, 741 F.2d 1525 (7th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985); Annotation, *Implication of Private Right of Action from Provision of Federal Statute not Expressly Providing for One—Supreme Court Cases*, 61 L.Ed.2d 910 (1980). *Cf. Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Appellants referred, arguing below, to *Cort v. Ash* and so must be deemed aware of it for frivolity assessment purposes. In *Cort*, the Supreme Court established a "four-prong" test to determine whether plaintiffs may sue officials under statutes which do not explicitly accord parties a private right of action. The Court held that no right existed. 422 U.S. at 77, 95 S.Ct. at 2087. As to implicit rights, Justice Brennan stated:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," [cite omitted] that is, does the statute create a federal *right* in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? [cite omitted] Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [cases omitted] And finally, is the cause of action one traditionally relegated to state law, * * * ?

*Id.* at 78, 95 S.Ct. at 2088.

The Court held that no private right of action derives from a criminal statute out-

lining the penalties and violations to which corporations are subject for contravening political action restrictions placed on business entities. *Id.* at 79, 95 S.Ct. at 2088. While the Court notes that "provision of a criminal penalty does not necessarily *preclude* implication of a private cause of action for damages," *id.,* it continues that "[h]ere, there was nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." *Id.* at 79–80, 95 S.Ct. at 2088–2089. *Touche Ross,* 442 U.S. at 568, 99 S.Ct. at 2485, states that the key issue is legislative intent. The other tests are mostly of value to determine whether legislative intent may have been implied though not stated.

Appellants are similarly situated in that the statutes cited, although not criminal in nature as in *Cort,* like it do not explicitly vest appellants with private causes of action against government officials. Appellants fail to meet any but the first part of the *Cort* test, an insufficient basis for standing to bring suit against the government. Additionally, appellants neglect to cite any legislative history indicative of congressional intent to accord implicitly these rights. As such, all of appellants' grievances predicated upon these statutory provisions are specious and frivolous. Appellants' briefs and oral argument before us were devoid of any effort to make a *Cort v. Ash* showing, *i.e.,* to demonstrate that their laundry list of statutes, they say the Secretary violated, expressly or by implication creates a private damage remedy against any *official,* or even that the statutory scheme necessitates one. Justice does not require transfer to any other court of the *Cort v. Ash* claims against individual defendants.

Essentially appellants allege they suffered severe pecuniary injury because of repeated erroneous decisions by Congress, the President, and the Department of Agriculture. They hope to state causes of action that can be maintained in the federal courts, on the theory that for every injury a lawsuit must somehow lie. If this were so, the Federal Government could be sued for its mistakes by most of the population, and the rest could sue their state and local governments. The hope must fail because of deficiencies for its purposes in the government's waivers of its sovereign immunity to be sued, and in its creation of causes of action in the federal courts. Most of us, most of the time, must suffer the consequences of the government's mistakes without recourse to the courts. The cases when we can sue must always be the exceptional ones. For a clear-cut instance of misgovernment not being remediable in a consented lawsuit, *cf. City of Manassas Park v. United States,* 633 F.2d 181, 224 Ct.Cl. 515 (1980).

### Conclusion

We *affirm* the district court's decision in summarily dismissing appellants' claims. Justice does not require their transfer to any other court. As to government liability, the most nearly applicable waivers of sovereign immunity clearly do not apply to the acts complained of. As to private liability, no statute is cited creating any. We deal, of course, with claims for money damages, and our decision is not to be read as dealing with prospective relief, or with appropriate judicial review of administrative action.

AFFIRMED.

MAYER, Circuit Judge, concurring.

I agree that neither the complaint which the district court summarily dismissed nor the arguments presented here show any merit to the case. The court's comprehensive analysis of appellants' confusing claims imparts an aura of validity to them that may be thought to belie the description "frivolous." But it conclusively shows that under no conceivable argument do they have a chance, and it would be wasteful to transfer any of the claims to the courts in which they belong.