**Captain James H. SMITH, Plaintiff–Appellant,**

v.

**Secretary of the Air Force, Verne ORR, Defendant–Appellee.**

Appeal No. 87–1384.

United States Court of Appeals, Federal Circuit.

Aug. 25, 1988.

---

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief was Major James Kinsella, Dept. of the Air Force, of counsel.

Gregory C. Sisk, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., argued for the amicus curiae Otis R. Bowen, M.D., Secretary of the U.S. Dept. of Health and Human Services, et al. With him on the brief were Richard K. Willard, Asst. Atty. Gen., Civ. Div., and William Kanter, Appellate Staff, Civ. Div.

John Davidson, Deputy Atty. Gen., State of Cal., San Francisco, Cal., argued for the amicus curiae Linda McMahon, Director, State Dept. of Social Services, et al. With him on the brief were John K. Van De Kamp, Atty. Gen., and John J. Klee, Jr., Deputy Atty. Gen.

Mark Howard Greenberg, Western Center of Law and Poverty, of Los Angeles, Cal., argued for the amicus curiae Victoria Grimesy, et al. With him on the brief were Robert Newman and Richard Rothschild. Also on the brief, as of counsel, were Peter Reid and Tricia Berke Vinson, Legal Aid Society of San Mateo County, Redwood City, Cal., Charles Greenfield and Brenton Rogozen, Legal Aid Society of Santa Clara County, San Jose, Cal., Evelyn R. Frank, Legal Aid Society of Alameda County, Oakland, Cal., and Anson Levitan, Legal Aid Society of San Diego County, San Diego, Cal.

James H. Smith, Gulfport, Miss., argued pro se.

Before SMITH, NEWMAN, and BISSELL, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this military separation/discharge case, the United States District Court for the Southern District of Mississippi, in an order dated February 19, 1987, granted the Secretary of the Air Force's (Government) motion to dismiss and/or for summary judgment and dismissed with prejudice Capt. James H. Smith's (Captain Smith) complaint seeking both reinstatement and

back pay as a result of his alleged illegal separation from active duty in the United States Air Force. We vacate the district court's order and remand this case to that court with instructions to transfer the case in its entirety to the United States Claims Court.

## I. *Issues*

In reviewing the order of the district court, dismissing with prejudice Captain Smith's complaint, we address the following two issues.

1. Whether this court has exclusive jurisdiction to make final decision for appellate review purposes whether a district court's jurisdiction was based on a nontax Tucker Act claim.

2. Whether, under the Tucker Act, the district court loses jurisdiction over a nontax Little Tucker Act claim if the claim, when first filed, did not exceed $10,000, but over the course of the litigation accrued to exceed this amount.

## II. *Background*

Captain Smith, on January 31, 1984, involuntarily received an honorable discharge from the United States Air Force on grounds that he twice had been nonselected for promotion and retention on active duty.[1] Prior to his discharge, Captain Smith determined that his military records were incomplete as a result of the entrance of a wrong social security number with his name in the Air Force's Automated Personnel System. Consequently, Captain Smith's records not only failed to contain all of his data but included erroneous data.

On April 7, 1981, Captain Smith applied to the Air Force Board for Correction of Military Records (AFBCMR) for correction of his military records and for supplemental consideration for promotion based upon the erroneous personal records. On February 23, 1982, the AFBCMR directed the correction of Captain Smith's military records. The case then was referred to a special review board. On April 29, 1982,

the special review board met and issued a recommendation stating that despite the corrections to Captain Smith's record, Captain Smith would not have been recommended for promotion. Upon consideration of the recommendation of the Special Review Board, the AFBCMR concluded that Captain Smith's nonselection was not caused by the deficiencies in his military record. On October 4, 1982, the AFBCMR issued its decision regarding the correction of Captain Smith's record and additional consideration of his promotion.

In an attempt to prevent his discharge, Captain Smith, on October 25, 1983, filed an action in the United States District Court for the Southern District of Mississippi. On January 24, 1984, Captain Smith's motion for preliminary relief precluding his separation was denied. The district court directed Captain Smith to exhaust his administrative remedies. Accordingly, on January 31, 1984, Captain Smith filed a second application with the AFBCMR contending that his separation was erroneous because he was given a special review board rather than a special selection board. The AFBCMR determined that the relief requested by Captain Smith was not warranted because Captain Smith's record would not have met the criteria for promotion regardless of the type of board which considered it. Thereafter, however, the AFBCMR granted partial relief to Captain Smith by recommending that his records show separation on May 15, 1984, rather than January 31, 1984. Captain Smith was notified of these actions of the AFBCMR on April 17, 1985.

As well as pursuing his administrative remedies, Captain Smith sought relief in the district court seeking both reinstatement and back pay. Captain Smith's claim for back pay began to accrue on his separation from the Air Force. At the time Captain Smith filed in the district court his claim for back pay, the accrued amount of his back pay did not exceed $10,000. Once the accrued amount exceeded $10,000, the

---

**1.** Circumstances leading to Captain Smith's discharge, not critical to our disposition of his appeal, are set forth in the district court's opin-

ion upon which this appeal is based. *Smith v. Secretary of the Air Force,* No. S83–0825(R) (S.D. Miss. filed Feb. 19, 1987).

Government moved to dismiss Captain Smith's complaint on the ground that the district court no longer had jurisdiction under the Little Tucker Act.[2] The district court denied that motion holding that it had jurisdiction.

On February 19, 1987, the district court reached the merits of Captain Smith's case and granted the Government's motion to dismiss and/or for summary judgment. Captain Smith's complaint was dismissed with prejudice. The district court held that Captain Smith's claims were not subject to judicial review by that court and, even if they were, that Captain Smith's discharge was lawful. Subsequently, Captain Smith appealed that judgment to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit, without explanation, transferred the case to this court.

### III. *Analysis*

#### A. *Inherent Jurisdiction To Determine Jurisdiction*

■ At the threshold of reaching the issue whether the district court properly exercised jurisdiction over Captain Smith's complaint, we address the Government's contention that this court has exclusive jurisdiction to determine for appellate review purposes whether a district court had jurisdiction over a nontax Little Tucker Act claim. The Government contends that the principles underlying the Federal Courts Improvement Act of 1982,[3] as well as the case law, necessarily lead to the conclusion that only this court has the jurisdictional authority to make final decision whether a district court's jurisdiction was based upon the Little Tucker Act. We disagree.

Congress, pursuant to 28 U.S.C. § 1295, did not remove the power from all other circuits to decide for themselves whether jurisdiction of the district courts in given cases was based on the Little Tucker Act. The Government's position, if adopted by this court, would usurp the well-established jurisdictional power of the regional circuit courts to determine for themselves, within the bounds of the law-of-the-case doctrine,[4] whether they have subject matter jurisdiction over an appeal before them.[5] Congress, pursuant to section 1295, expressly granted this court *exclusive jurisdiction over the merits* of appeals from federal district courts if the jurisdiction of those courts was based on subject matter falling under section 1295. It does not necessarily follow that Congress also granted us *exclusive* appellate jurisdiction to determine *whether* a district court's jurisdiction *was* based on subject matter falling under section 1295.

Implicit in the Government's position that this court has exclusive appellate jurisdiction to determine whether a district court's jurisdiction is based on the Little Tucker Act is the creation of a two-tiered system for appellate review of the issue whether a district court's jurisdiction is based on the Little Tucker Act. Under the Government's putative system, the regional circuits' inherent jurisdictional authority to determine for themselves whether they have jurisdiction over the merits of any appeal before them is restricted by section 1295 to making a mere threshold determination whether the Little Tucker Act was *fairly at issue* in the district court. According to the Government, if a regional circuit determines that the Little Tucker Act was fairly at issue in the district court, the regional circuit is required to transfer the case to this court so that we can finally decide whether the district court's jurisdiction was based on the Little Tucker Act.

Pursuant to the Government's construction of section 1295, only this court has the authority to decide whether the district courts actually had jurisdiction under the Little Tucker Act. Because the regional circuits, under that interpretation, would be

---

**2.** 28 U.S.C. § 1346(a)(2) (1982).

**3.** *Id.* § 1295(a)(2).

**4.** *See Christianson v. Colt Indus. Operating Corp.,* — U.S. —, —, 108 S.Ct. 2166, 2176, 100 L.Ed.2d 811 (1988).

**5.** *See Stoll v. Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 137–38, 83 L.Ed. 104 (1938); *In re Labor Board,* 304 U.S. 486, 494, 58 S.Ct. 1001, 1005, 82 L.Ed. 1482 (1938).

powerless to make such a determination for themselves, our sister circuits would be relegated to slavishly transferring to the Federal Circuit every appeal brought before them wherein either the litigants before the regional circuit argue, or the regional circuit itself perceives, the possibility that the district court's jurisdiction was based upon subject matter falling under section 1295. As a result, the Federal Circuit would be dramatically elevated to a new tier in the judicial structure of our federal appellate system by being placed in the position of supervising and, in some cases, mandating the regional circuits' exercise of their own jurisdiction. Surely, this is not what Congress intended when it enacted section 1295. Indeed, this result flies in the face of expressed congressional intent underlying the establishment of this court that "[t]he [Federal Circuit] is on line with other Federal courts of appeals[,] that is, *it is not a new tier in the judicial structure.*" [6] (Emphasis supplied.)

Moreover, the Government's position runs afoul to the recent decision of the United States Supreme Court in *Christianson v. Colt Industries Operating Corp.*[7] In that case, the Supreme Court held that a transferee court must apply law-of-the-case principles to a transfer decision of a coordinate court.[8] The transferee court is bound by the transfer decision unless it determines that the transfer decision was " 'clearly erroneous and would work a manifest injustice.' " [9] Adopting the Government's position in this case would require us to ignore these principles since, under the Government's system, we are not bound by a transfer decision of a sister circuit. The Supreme Court made no such exception for this court when it discussed the application of the law-of-the-case doctrine to transfer decisions and neither shall we.

The Eighth Circuit, in *Shaw v. Gwatney,* [10] and the Third Circuit, in *Chabal v. Reagan,*[11] clearly recognized the problems inherent in the Government's system and expressly rejected a reading of section 1295 that the Government adopts in this case. In *Shaw,* the Eighth Circuit stated: [12]

> The Federal Circuit, relying on additional portions of the legislative history regarding the need to limit forum shopping and achieve decisional uniformity in specified areas of the law, once stated that section 1295 vests it with the exclusive power to determine all issues of appellate subject matter jurisdiction arising thereunder. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 877–78 (Fed.Cir. 1983). Uniformity achieved in that manner, however, would require that a regional circuit refer to the Federal Circuit all issues of section 1295 jurisdiction even when addressing an appeal on its face within regional jurisdiction or when raising jurisdiction on its own motion. *We decline to lightly read into the language of section 1295 a requirement which would thus subordinate a regional circuit to the Federal Circuit with regard to such traditional and inherent functions as determining its own jurisdiction and supervising the exercise of jurisdiction by the district courts below it.* [Emphasis supplied.]

We believe that only congressional action *expressly* excising a fundamental power from the regional circuits, i.e., the inherent power of the circuit courts to determine for themselves whether they have jurisdiction over the appeal before them, and mandating such an alteration to our federal court

---

6. S.Rep. No. 275, 97th Cong., 2d Sess. 2–3, *reprinted in* 1982 U.S. Code Cong. & Admin. News 11, 12–13.

7. *Christianson,* —— U.S. ——, 108 S.Ct. 2166, 100 L.Ed.2d 811.

8. *Id.* at —— & n. 5, 108 S.Ct. at 2177 & n. 5. Law-of-the-case principles must be applied notwithstanding that the transferor court did not explicate its rationale for the transfer. *Id.* at ——, 108 S.Ct. at 2177.

9. *Id.* at ——, 108 S.Ct. at 2177 (quoting *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983)).

10. *Shaw v. Gwatney,* 795 F.2d 1351 (8th Cir. 1986).

11. *Chabal v. Reagan,* 822 F.2d 349 (3d Cir.1987).

12. *Shaw,* 795 F.2d at 1353 n. 2.

system, could provide the basis for what the Government proposes in this case.[13] *Nothing* in section 1295 grants this court exclusive appellate jurisdiction to determine whether a district court's jurisdiction was based on subject matter falling under section 1295.[14]

As grounds for supporting its interpretation of section 1295, the Government relies on both Supreme Court and Federal Circuit precedent. However, contrary to the Government's assertions, these cases neither control nor support its statutory interpretation in this case.

First, relying on *C.R. Bard, Inc. v. Schwartz,*[15] the Government proposes that this court already has decided that our exclusive jurisdiction over the merits of appeals from district court cases based in whole or in part on the patent laws also gives us exclusive jurisdiction to determine whether the district court actually had jurisdiction under the patent laws. Applying its interpretation of *C.R. Bard* to this case, the Government concludes that our exclusive jurisdiction over the merits of appeals from district court cases, based in whole or in part on the Little Tucker Act, also gives us exclusive jurisdiction to determine whether the district court actually had jurisdiction under the Little Tucker Act. We disagree with the Government's reading of the jurisdictional holding in *C.R. Bard* and, on that basis, disagree with the propriety of the Government's reliance on *C.R. Bard*

as precedent for supporting its interpretation of section 1295.

The Government relies on, as binding precedent, a statement made in *C.R. Bard* that "Congress intended this court to have the exclusive authority under § 1295 to decide the issue, necessarily an integral part of a case, whether a district court has jurisdiction to entertain a case under § 1338."[16] The existence, *vel non,* of jurisdiction is necessarily an integral part of every case, but that is not to say that only the court having such jurisdiction is anointed to declare the existence or absence of jurisdiction. On the basis of this general expression in *C.R. Bard,* the Government rests its conclusion that this court, in that case, *held* that it has exclusive jurisdiction to determine whether the district court actually had jurisdiction based on subject matter falling under section 1295. We believe that the Government's reliance on this statement as a holding of this court in *C.R. Bard* is misplaced and that statement is not a precedential holding by which we are bound.

■ The Government's interpretation of *C.R. Bard* conflicts with, and is contrary to, the Supreme Court's decision in *Christianson.* As previously discussed, the Supreme Court's decision makes no exception for this court in its analysis of the law-of-the-case doctrine as applied to transfer decisions. This court, like every other circuit court, must apply law-of-the-case principles

---

**13.** Currently, in the House Committee on the Judiciary is a proposed bill that would vest with this court "exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, * * * granting or denying, in whole or in part, a motion to transfer an action to the United States Claims Court." House Comm. on the Judiciary, 100th Cong., 2d Sess., A Bill to Amend Title 28, United States Code, to Make Certain Improvements with Respect to the Federal Judiciary, and for Other Purposes 48 (Comm. Print 1988).

**14.** We are aware of no regional circuit court that shares the view of the Government that this court has exclusive appellate jurisdiction to determine whether a district court's jurisdiction was based on the Little Tucker Act. Rather, a regional circuit, when faced with the issue whether it has jurisdiction over the merits of the appeal before it, first will determine for itself

whether the district court's jurisdiction was based on the Little Tucker Act, and then will act appropriately based on that determination. *See, e.g., Massachusetts v. Departmental Grant Appeals Bd. of the Dep't of Health and Human Servs.,* 815 F.2d 778 (1st Cir.1987); *Chabal,* 822 F.2d 349; *Amoco Prod. Co. v. Hodel,* 815 F.2d 352 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988); *Matthews v. United States,* 810 F.2d 109 (6th Cir. 1987); *Wronke v. Marsh,* 767 F.2d 354 (7th Cir. 1985); *Shaw,* 795 F.2d 1351; *Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986), *vacated on other grounds,* — U.S. —, 108 S.Ct. 2861, 101 L.Ed. 2d 897 (1988); *Sharp v. Weinberger,* 798 F.2d 1521 (D.C.Cir.1986).

**15.** *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874 (Fed.Cir.1983).

**16.** *Id.* at 878.

to transfer decisions of coordinate courts, notwithstanding that such a decision may implicate this court's jurisdiction.[17] The Government's interpretation of *C.R. Bard*, being to the contrary, cannot be adopted by this court.

Moreover, it is well established that a general expression in an opinion, which expression is not essential to the disposition of the case, does not control a judgment in a subsequent proceeding.[18] Broad language in an opinion, which language is unnecessary to the court's decision, cannot be considered binding authority.[19]

This court, in *C.R. Bard*, recognized that we have the inherent jurisdiction to determine our jurisdiction. On that basis, this court *held expressly* that "we hold that we have jurisdiction to decide whether the district court had jurisdiction under § 1338."[20] The prior general expression in *C.R. Bard* relied upon by the Government in this case is unnecessary to, and goes beyond, this express holding.

Second, the Government cites the recent decision of the United States Supreme Court in *United States v. Hohri*[21] as supporting its statutory interpretation in this case. *Hohri* neither controls nor supports the Government's conclusion.

The Supreme Court, in *Hohri*, was faced with the issue of which circuit court, either the appropriate regional circuit or the Federal Circuit, has jurisdiction *over the merits* of an appeal from a district court's decision of a case raising both a nontax claim under the Little Tucker Act and a claim under the Federal Tort Claims Act (FTCA). There was no dispute in *Hohri*

that the jurisdiction of the district court was based in part on the Little Tucker Act. On the basis of a detailed analysis of section 1295, the Supreme Court held that this court, rather than the appropriate regional circuit, has exclusive jurisdiction, pursuant to section 1295, *over the merits* of such a "mixed" appeal.[22]

The Supreme Court's holding in *Hohri* is specific to the issue before that Court whether the Federal Circuit has exclusive jurisdiction *over the merits* of an appeal from a district court case raising both nontax Little Tucker Act claims and FTCA claims. In contrast, the issue in this case is whether we have the exclusive jurisdictional authority to determine *whether* the district court's jurisdiction was based upon the Little Tucker Act. Not only is the issue before this court, i.e., exclusive jurisdiction *to determine whether* a district court possessed section 1295 subject matter jurisdiction, wholly unrelated to the issue addressed by the Supreme Court in *Hohri*, i.e., exclusive jurisdiction *over the merits* of an appeal from a district court proceeding based on the Little Tucker Act, but the two issues involve unrelated policy considerations. We can see no justification for the Government to rely on *Hohri* as supporting its conclusion.

Third, the Government cites the following precedents of this court as supporting its statutory interpretation and jurisdictional position in this case: *Reynolds v. Army and Air Force Exchange Service*,[23] *Harris v. United States*,[24] *Galloway Farms, Inc. v. United States*,[25], *Bragg v. Keohane*,[26]

---

**17.** *See Christianson,* —— U.S. at —— n. 5, 108 S.Ct. at 2177 n. 5.

**18.** *See, e.g., Osaka Shosen Kaisha Line v. United States,* 300 U.S. 98, 103, 57 S.Ct. 356, 358, 81 L.Ed. 532 (1937); *Humphrey's Executor v. United States,* 295 U.S. 602, 627, 55 S.Ct. 869, 873, 79 L.Ed. 1611 (1935); *Harriman v. Northern Sec. Co.,* 197 U.S. 244, 291, 25 S.Ct. 493, 502, 49 L.Ed. 739 (1905).

**19.** *Kastigar v. United States,* 406 U.S. 441, 454–55, 92 S.Ct. 1653, 1661–62, 32 L.Ed.2d 212 *reh'g denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972).

**20.** *C.R. Bard,* 716 F.2d at 878.

**21.** *United States v. Hohri,* —— U.S. ——, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

**22.** *Id.* at 2253.

**23.** *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746 (Fed.Cir.1988).

**24.** *Harris v. United States,* 841 F.2d 1097 (Fed. Cir.1988).

**25.** *Galloway Farms, Inc. v. United States,* 834 F.2d 998 (Fed.Cir.1987).

**26.** *Bragg v. Keohane,* 820 F.2d 402 (Fed.Cir. 1987).

and *Bray v. United States,*[27] A careful reading of this case law, however, reveals that these cases neither address the issue now before the court nor support the conclusion reached by the Government in its briefs. Rather, the cited cases merely are consistent with the well-established principle that a circuit court has the inherent jurisdiction to determine whether it has jurisdiction over the appeal before it.

In *Reynolds,* in exercising this court's inherent jurisdiction to determine whether we had jurisdiction over Reynolds' appeal, we were unable to make a jurisdictional determination because it was not clear that Reynolds was afforded an opportunity to establish jurisdictional facts prior to the district court dismissing her case. Accordingly, we vacated the district court's judgment and remanded the case to that court for further proceedings.[28] In *Harris,* exercising our inherent authority to determine whether we had jurisdiction over the appeal before us by reviewing the jurisdiction of the district court, we concluded that the district court lacked jurisdiction under the Tucker Act.[29] In *Galloway Farms,* this court, relying on its inherent power to determine whether it had jurisdiction over the appeal before it, determined that the district court lacked subject matter jurisdiction, pursuant to the Little Tucker Act, over the alleged claims.[30] In *Bragg,* this court exercised its inherent authority to determine its jurisdiction by concluding that the district court's jurisdiction was not based on the Little Tucker Act.[31] Finally, in *Bray,* the issue addressed by this court was whether we have exclusive jurisdiction to hear *the merits* of an appeal from the district court's rejection, in view of the 6–year statute of limitations, of Little Tucker Act claims.[32] Contrary to the assertion by the Government, the cases it cites *do not* support its statutory interpretation and jurisdictional position in this case. Not one of these cases relies upon the Government's proposition that this court has *exclusive* appellate jurisdiction to determine *whether* a district court's jurisdiction is based on the Little Tucker Act. Rather, the cited cases merely follow the well-established principle that this court, *like the other circuit courts,* has the inherent jurisdiction to determine whether it has jurisdiction over the appeal before it.

Finally, in reaching its jurisdictional conclusion, the Government recognizes, but fails either to explain or to distinguish, the Eighth Circuit's decision in *Shaw v. Gwatney*[33] or the Third Circuit's decision in *Chabal v. Reagan.*[34] Aside from adopting positions "contrary" to the Government's interpretation of section 1295 and jurisdictional position based thereon, our sister circuits in these cases expressly rejected two of the grounds relied upon by the Government as supporting its jurisdictional position.[35]

As explained earlier, the Eighth Circuit, in *Shaw,* rejected the statement in *C.R. Bard,* relied upon by the Government in this case, that section 1295 provides this court with the exclusive jurisdiction to determine whether a district court's jurisdiction is based in whole or in part on subject matter arising under section 1295.[36] The

---

27. *Bray v. United States,* 785 F.2d 989 (Fed.Cir. 1986).

28. *Reynolds,* 846 F.2d at 748.

29. *Harris,* 841 F.2d at 1099.

30. *Galloway Farms,* 834 F.2d at 1000.

31. *Bragg,* 820 F.2d at 403–04.

32. *Bray,* 785 F.2d at 990–93.

33. *Shaw,* 795 F.2d 1351.

34. *Chabal,* 822 F.2d 349.

35. We express no opinion as to whether our sister circuits correctly determined in these cases whether the jurisdiction of the district courts was based on the Little Tucker Act or whether they properly transferred the case or otherwise disposed of it following such a determination. Our reliance on these cases is limited to their recognition and application of the well-established principle that the regional circuits have the inherent authority to determine for themselves whether they have jurisdiction over the appeal before them.

36. *Shaw,* 795 F.2d at 1353 n. 2.

Third Circuit, in *Chabal*, rejected the position adopted by the Government that the Supreme Court's decision in *Hohri* supports the Government's jurisdictional position.[37] Unlike the Government in this case, the Third Circuit properly recognized that the issue addressed by the Supreme Court in *Hohri* was the statutory exception clause of section 1295(a)(2), which clause pertains to this court's exclusive jurisdiction *over the merits* of appeals pursuant to section 1295.[38]

Well established among the jurisdictional powers of all appellate courts is the inherent power of the courts to determine for themselves, within the bounds of the law-of-the-case doctrine, whether they have subject matter jurisdiction over an appeal before them. The Government, under the guise of section 1295, attempts to usurp this power of our sister circuits by elevating this court to a position of supervising and mandating the regional circuits' exercise of their own jurisdiction. We believe that only congressional action *expressly* providing for such a deviation could provide the basis for what the Government attempts in this case. Contrary to the position taken by the Government, nothing in section 1295 provides the basis for such a change.

### B. *Jurisdiction of the District Court*

■ The Government, on two different occasions, argued to the district court that it lacked jurisdiction under the Little Tucker Act over Captain Smith's case. The Government contended that although Captain Smith's back pay, at the time he filed his claim, did not exceed $10,000, Captain Smith's back pay had subsequently accrued to an amount exceeding $10,000. Because Captain Smith had not waived his right to the amount exceeding $10,000, the Government argued that the district court lost jurisdiction when the back pay accrued to more than $10,000. The district court rejected these assertions and continued with the case, ultimately reaching the merits and granting the Government's motion to dismiss and/or for summary judgment. Because we hold that the district court lacked Little Tucker Act jurisdiction over Captain Smith's case, we vacate the district court's order and remand this case to that court with instructions to transfer the case to the Claims Court.

Our analysis of this issue begins with the Little Tucker Act itself, which act operates both as a grant of jurisdiction as well as a waiver of sovereign immunity:[39]

§ 1346. **United States as defendant**

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

\*　　\*　　\*　　\*　　\*　　\*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort \* \* \*.

It is clear from the language of the Little Tucker Act that the district courts are without jurisdiction over a nontax claim against the United States on which claim plaintiff's request for recovery exceeds $10,000.[40] Such an action is proper only in the Claims Court.[41]

■ The Tucker Act operates as a waiver of sovereignty by the United States and we are obliged to construe such waiv-

---

**37.** In this post-*Hohri* case, the Third Circuit, expressly agreeing with and quoting from the Eighth Circuit's reasoning in *Shaw*, rejected the Government's jurisdictional argument that was premised on the interpretation of section 1295 asserted by the Government in this case that the Federal Circuit has exclusive appellate jurisdiction to determine whether a district court's jurisdiction is based on the Little Tucker Act. *Chabal*, 822 F.2d at 355.

**38.** *Id.* at 354 n. 5.

**39.** 28 U.S.C. § 1346.

**40.** *See Chula Vista City School Dist. v. Bennett,* 824 F.2d 1573, 1578–79 (Fed.Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988).

**41.** 28 U.S.C. § 1491.

ers strictly.[42]  Accordingly, we concur in the positions taken by the Third Circuit in *Chabal v. Reagan*,[43] the Eighth Circuit in *Shaw v. Gwatney*,[44] and the District of Columbia Circuit in *Goble v. Marsh*[45] and hold that, within the ambit of section 1346(a)(2), the amount of a claim against the United States for back pay is the total amount of back pay the plaintiff stands ultimately to recover in the suit and is not the amount of back pay accrued at the time the claim is filed.  Any other interpretation would circumvent congressional intent in limiting the Tucker Act jurisdiction of the district courts to claims not exceeding $10,-000.  Our holding does not preclude a plaintiff from bringing in a district court a claim against the United States worth more than $10,000.  Rather, our holding is entirely consistent with the well-established principle that a plaintiff may pursue such a claim in a district court if the plaintiff waives his right to recover the amount exceeding $10,-000.[46]  The amount of a claim under the Little Tucker Act, for jurisdictional purposes, is based on the actual recovery sought by a plaintiff pursuant to that claim and is not based on the potential worth of the claim.[47]

Here, Captain Smith filed a claim with the district court for back pay.  Although at the time he filed his complaint the accrued amount of his claim did not exceed $10,000, Captain Smith's claim for back pay did accrue to greater than $10,000 during the district court's consideration of his claim.  Because Captain Smith did not waive his right to recover the amount exceeding $10,000, the district court lost jurisdiction over his claim when it exceeded this amount.

**42.**  *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986).

**43.**  *Chabal,* 822 F.2d at 356–57.

**44.**  *Shaw,* 795 F.2d at 1355.

**45.**  *Goble v. Marsh,* 684 F.2d 12, 15–16 (D.C.Cir. 1982).

**46.**  *See, e.g., Goble,* 684 F.2d at 15; *Stone v. United States,* 683 F.2d 449, 451 (D.C.Cir.1982); *Sutcliffe Storage & Warehouse Co. v. United States,* 162 F.2d 849, 852–53 (1st Cir.1947); *Unit-*

■  Typically, when a back pay claim exceeds $10,000, district courts transfer it, along with any associated equitable claim, to the Claims Court.[48]  This is true unless the type of equitable relief sought is outside that available in the Claims Court.  In that instance, the claim for money damages would be transferred to the Claims Court, and the district court would retain jurisdiction over the equitable claim.[49]  Such was not the case here.  Captain Smith's equitable claim for reinstatement was within the Claims Court's jurisdiction.[50]  Therefore, the district court had no basis to refuse transferring both the monetary and equitable claims to the Claims Court.

## IV.  CONCLUSION

In view of the foregoing, we hold that the district court lacked jurisdiction over Captain Smith's case.  Accordingly, we vacate the district court's order and remand this case to that court with instructions to transfer the case in its entirety to the United States Claims Court.

## V.  COSTS

Costs on appeal are awarded to appellant Captain Smith.

**VACATED AND REMANDED.**

BISSELL, Circuit Judge, concurring in result.

I agree that this case should be transferred to the Claims Court.  Because the majority, however, has fundamentally misconstrued binding precedent, I concur only in the result reached by the majority.

*ed States v. Johnson,* 153 F.2d 846, 848 (9th Cir.1946).

**47.**  *See Zumerling v. Devine,* 769 F.2d 745, 748–49 (Fed.Cir.1985); *Stone,* 683 F.2d at 451.

**48.**  *See, e.g., Keller v. Merit Sys. Protection Bd.,* 679 F.2d 220, 222–23 (11th Cir.1982) (explaining proposition and citing many supporting cases).

**49.**  *See Gower v. Lehman,* 799 F.2d 925, 928–29 (4th Cir.1986).

**50.**  28 U.S.C. § 1491(a)(2).

This court has already decided that its exclusive jurisdiction over district court cases based in whole or part on the patent laws also gives it exclusive jurisdiction to determine whether the district court actually had jurisdiction under the patent laws. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877–78, 219 USPQ 197, 200–01 (Fed.Cir. 1983). The majority makes the uncanny statement that this holding is merely dictum. Maj. op. at 1549–50. The impact of the majority's position not only denies the Federal Circuit's exclusive appellate authority to determine a district court's jurisdiction under the Little Tucker Act, but also denies the Federal Circuit has this power in patent cases. It is obvious from reading *Bard*, however, that the noted holding was essential to the disposition of the case.

In *Bard*, a patent licensee appealed a district court decision dismissing the licensee's declaratory judgment action. 716 F.2d at 875–76, 219 USPQ at 199. On appeal, this court considered whether it had authority to decide if the district court's jurisdiction rested on the patent laws. *Id.* at 877, 219 USPQ at 200. The court concluded that it had such authority for two reasons. First, it stated that it had inherent power to determine its own jurisdiction. *Id.* Because the Federal Circuit had jurisdiction only if the district court's jurisdiction rested on the patent laws, the court could inquire into the basis of the district court's jurisdiction. Second, the court held that our jurisdictional statute, 28 U.S.C. § 1295 (1982), gave us exclusive authority to determine if the district court actually had jurisdiction under the patent laws. *Id.* at 877–78, 219 USPQ at 200–01. It cannot be seriously argued that this construction of section 1295 was an unnecessary part of the decision.

In interpreting section 1295, the court in *Bard* relied on legislative history revealing that Congress intended the courts to construe section 1295 in a manner consistent with promoting national uniformity in patent, Little Tucker Act, and other areas entrusted to the Federal Circuit. *Bard*, 716 F.2d at 877–78, 219 USPQ at 200. Referring to this legislative history, the court

stated that "Congress intended this court to have the exclusive authority under § 1295 to decide the issue, necessarily an integral part of a case, whether a district court has jurisdiction [under the patent laws]." *Id.* at 878, 219 USPQ at 201.

This decision is binding precedent that we can reject only if sitting in banc. *South Corp. v. United States*, 690 F.2d 1368, 1370 n. 2 (Fed.Cir.1982). The reasoning in *Bard*, moreover, governs this case. It is clear that Congress wanted national uniformity in the adjudication of Little Tucker Act claims. The jurisdictional aspects of Little Tucker Act claims, however, are inextricably linked to the merits of the claims. For example, the jurisdictional question presented here—whether Smith stated a valid Little Tucker Act claim when the amount of damages grew during the course of litigation to exceed $10,000—is an essential aspect on the merits of his claim. In view of the congressional intent to promote uniformity in Little Tucker Act caselaw, it is inconceivable that Congress could have intended the twelve regional circuits, along with this court, to determine such questions independently. Such a situation would offer the potential for the development of thirteen different interpretations of the matter. For these reasons, I would hold that we have exclusive appellate authority to determine whether a district court's jurisdiction is based on the Little Tucker Act.

The Supreme Court's decision in *United States v. Hohri*, —— U.S. ——, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987) supports this conclusion. There the Court held that section 1295 granted us exclusive jurisdiction over a mixed appeal consisting of an issue within our jurisdiction and an issue outside of our jurisdiction. *Id.* at 2253. In arriving at this decision, the Court explicitly stated that section 1295 should be read broadly because of the congressional intent to promote national uniformity in the areas of the law entrusted to the Federal Circuit's jurisdiction. *Id.* at 2251–52. This holding is ample support for the broad reading of section 1295 that I propose.

The majority greatly relies on the recent Supreme Court decision in *Christianson v. Colt Industries Operating Corp.,* —— U.S. ——, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In that case, the Court stated that when one appellate court transfers a case to another appellate court, the doctrine of the law of the case generally requires the second court to accept the first court's conclusion as to jurisdiction. At ——, 108 S.Ct. at 2177. The Supreme Court, nonetheless, noted that an appellate tribunal has the power to reconsider the transferor court's jurisdictional decision in certain extraordinary circumstances notwithstanding the doctrine of the law of the case:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

At ——, 108 S.Ct. at 2178 (quoting *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983)).

The Supreme Court recognized that the doctrine of the law of the case must bow when the prior decision was clearly erroneous. To my mind, any prior jurisdictional decision in a transferred case inconsistent with the statutory construction I propose would fall into the "clearly erroneous" category, and consequently, would not be binding on the court. As a practical matter, furthermore, this court will not face a law of the case jurisdictional question denying our jurisdiction because the issue will arise only when another circuit has recognized our jurisdiction and transferred the case to us. For these reasons, I do not see how *Colt* hinders us from holding that we have exclusive appellate threshold jurisdiction in Little Tucker Act appeals.

Although I recognize that the Eighth Circuit's decision in *Shaw v. Gwatney,* 795 F.2d 1351 (8th Cir.1986) and the Third Circuit's decision in *Chabal v. Reagan,* 822 F.2d 349 (3d Cir.1987) are to the contrary, I must respectfully disagree. Both *Shaw,* 795 F.2d at 1356, and *Chabal,* 822 F.2d at 357, involved back pay claims against the government that accrued to exceed $10,000. In *Shaw,* the Eighth Circuit determined that it could decide whether a district court's jurisdiction rested on the Little Tucker Act because it had inherent power to determine its own jurisdiction and to supervise the exercise of jurisdiction by the district courts below it. *Shaw,* 795 F.2d at 1353 n. 2. The Third Circuit in *Chabal* made the same decision by invoking the "overarching principle that requires us continually to inquire into our own jurisdiction because as courts of limited jurisdiction we cannot act without assuring ourselves of the statutory predicate for such action." *Chabal,* 822 F.2d at 355.

The equitable powers on which the Eighth and Third Circuits based their decisions, nonetheless, must yield to statutory directive. For the reasons already given, I would hold that section 1295 directs only the Federal Circuit to decide whether a district court's jurisdiction rests on the Little Tucker Act.

My position does not go so far as to deny that the regional circuits may determine whether the Little Tucker Act is fairly at issue. *Cf. Hill v. Department of the Air Force,* 796 F.2d 1469, 1470–71 (Fed.Cir. 1986) (holding that although Federal Circuit has no jurisdiction to reach merits of discrimination claim, the court must determine threshold question of whether nonfrivolous discrimination claim is at issue in appeal). Under my analysis, if a regional circuit concluded the Little Tucker Act was not at issue, it would decide the case. If it ruled the Act was at issue, it would transfer the case to us.

Because the majority misconstrues binding precedent that should lead it to conclude that only the Federal Circuit has the power to determine whether the district court's jurisdiction rested on the Little Tucker Act, I concur only in the result.