# United States Court of Appeals
# for the Federal Circuit

---

**MINISTERIO ROCA SOLIDA,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5058

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00541-EDK, Judge Elaine Kaplan.

---

Decided: February 26, 2015

---

JOSEPH F. BECKER, Center for Justice and Constitutional Litigation, Reno, Nevada, argued for plaintiff-appellant.

ANNA KATSELAS, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ELIZABETH ANN PETERSON, SAM HIRSCH, GREGORY D. PAGE, ANDREW C. MERGEN, KATHERINE J. BARTON.

---

Before WALLACH, TARANTO, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.

Concurring opinion filed by *Circuit Judge* TARANTO.

WALLACH, *Circuit Judge.*

This case presents the question of whether a suit brought against the United States in the United States Court of Federal Claims ("Claims Court") must be dismissed for lack of subject matter jurisdiction because an earlier-filed related claim against the United States remains pending in a United States district court. Because the Claims Court correctly held jurisdiction is improper under these circumstances, this court affirms.

## BACKGROUND

In 2006, plaintiff-appellant Ministerio Roca Solida ("Roca Solida"), a non-profit religious organization, purchased a forty-acre parcel of land in Nevada. At the time of purchase, a desert stream flowed across the property, the water rights to which Roca Solida also purchased. The water supplied a recreational pond and was used for baptisms, among other uses. Roca Solida's property is situated within a national wildlife refuge that is managed by the U.S. Fish and Wildlife Service ("FWS"). According to defendant-appellee United States, an FWS water restoration project completed in 2010 "restored [the] stream to its natural channel," the effect of which was to divert the stream away from Roca Solida's property, depriving it of water it would have otherwise enjoyed. Appellee's Br. 2–3.

In response, Roca Solida instituted two lawsuits against the United States. First, it brought suit in federal district court in Nevada, seeking declaratory, injunctive, and compensatory relief on the basis of alleged violations under the First and Fifth Amendments to the United States Constitution, and also "at least $86,639.00 in damage[s]" under the Federal Tort Claims Act, 28 U.S.C.

§§ 1346(b), 2671–80. Appellant's App. 41. Second, it brought suit two days later in the Claims Court, seeking declaratory relief and compensatory damages on the basis that the diversion project constituted an unlawful taking in violation of the Fifth Amendment and asserting FWS negligently executed the water diversion project, causing $86,639 in damages to "land, structures, and animals." *Id*. at 14–15.

The United States moved to dismiss the Claims Court action for lack of subject matter jurisdiction in light of the pending district court action under 28 U.S.C. § 1500 (2006). The Claims Court dismissed the case without prejudice. Roca Solida timely appealed. This court has jurisdiction to review the decision of the Claims Court under 28 U.S.C. § 1295(a)(3) (2012).

DISCUSSION

I. Standard of Review

An order dismissing a case for lack of subject matter jurisdiction under 28 U.S.C. § 1500 is reviewed de novo. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff bears the burden of establishing jurisdiction. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

II. Jurisdiction Is Barred by Statute

The Claims Court "has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1727 (2011). This rule derives from 28 U.S.C. § 1500, which states:

> The United States Court of Federal Claims shall not have jurisdiction of any claim *for or in respect to* which the plaintiff or his assignee has pending in any other court any suit or process against the

United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (emphasis added). Two inquiries are required when determining whether § 1500 applies: "(1) whether there is an earlier-filed suit or process pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are for or in respect to the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (internal quotation marks and citation omitted). Roca Solida does not dispute the suit filed in Nevada district court constitutes an earlier-filed suit for purposes of the first inquiry.

With respect to the second inquiry, the Supreme Court has explained that "[t]wo suits are *for or in respect to* the same claim, precluding jurisdiction in the [Claims Court], if they are *based on substantially the same operative facts*, regardless of the relief sought in each suit." *Tohono*, 131 S. Ct. at 1731 (emphases added). That is, the two co-pending suits need not be identical. *See id.* at 1728 (quoting *Keene Corp. v. United States*, 508 U.S. 200, 212 (1993)) ("The phrase 'in respect to' . . . 'make[s] it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity.'"). In addition, it is irrelevant whether the relief sought in the two co-pending suits is the same or different (e.g., injunction versus money damages). *Id.* at 1731. All that matters is that the two suits be based on "substantially the same operative facts." *Id.*

In this case, the Claims Court found the two pending actions "[met] the standard set forth in *Tohono*," i.e., they were "'based on substantially the same operative facts.'"

*Ministerio Roca Solida v. United States*, No. 12-541L, at 3 (Fed. Cl. Jan. 15, 2014) (quoting *Tohono*, 131 S. Ct. at 1731). The Claims Court noted "the claims in both actions arise from [Roca Solida's] ownership of the same parcel of land and water and its alleged injuries as a result of the same FWS water diversion project," and also noted the two complaints used "virtually identical language." *Id.*

In Plaintiff's Opposition to United States' Motion to Dismiss, Roca Solida argued takings claims "do not (necessarily) subsume other claims *arising from the same nucleus of operative fact.*" Appellant's App. 53 (emphasis added); *see id.* at 59. On appeal, Roca Solida repeats this language, *see* Appellant's Br. 14, also noting its "[c]omplaints are similar because they describe the *same* errant project," Reply Br. 10. Although Roca Solida criticizes the "same operative facts" standard articulated in *Tohono*, it does not argue that its co-pending suits are not based on substantially the same operative facts. *See* Reply Br. 8 ("The *Tohono* [C]ourt's notion that claims are identical if they arise from the same transaction or have a substantial overlap in the operative facts is deeply flawed . . . .").

This court concludes Roca Solida's two co-pending suits are based on substantially the same operative facts. Jurisdiction in the Claims Court is therefore barred under § 1500.

### III. Appellant's Arguments Are Precluded by Binding Precedent

Roca Solida presents three principal arguments challenging, in effect, the Supreme Court's interpretation of § 1500. These arguments relate to Congressional intent, pre-*Tohono* judicial interpretation of § 1500, and the extent to which the rule of *Tohono* fulfills the goals of judicial economy. Roca Solida additionally attempts to

distinguish *Tohono* on the basis that *Tohono* did not involve a statute of limitations and the present matter does. Each of these arguments is addressed in turn.

A. *Tohono* Represents Binding Precedent,
Notwithstanding Appellant's Assertions of
Congressional Intent

First, Roca Solida argues "Congress did not intend for § 1500 to put plaintiffs to a choice between two nonduplicative remedies." Appellant's Br. 17. It notes § 1500 was enacted during the aftermath of the Civil War to prevent duplicative lawsuits that could have allowed plaintiffs to "obtain[] twice what they deserved." *Id.* at 18. Unlike such duplicative remedies, Roca Solida asserts, its desired remedies are nonduplicative because it seeks only to be made whole.[1] *Id.* at 21. Roca Solida maintains it cannot

---

[1]    In its brief, Roca Solida asserts that "denying access to judicial remedies that allow persons to be made whole according to the Constitution will only further encourage aggrieved parties to vindicate their own rights. . . . Southern Nevadans have seen recently exactly what such self-vindication of rights may look like and judicial actions fostering such scenes should not be encouraged." Appellant's Br. 12. During oral argument, counsel conceded this statement was written in the light and context of a possibility that disappointed litigants "may take up arms." Oral Arg. at 1:55–2:12, *Roca Solida v. United States*, *available at* http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2014-5058.mp3. Appellant's brief, dated May 12, 2014, was filed in the wake of an armed protest in southern Nevada by supporters of a rancher named Cliven Bundy against the Bureau of Land Management. *See, e.g.*, Jeff German, *Sheriff: FBI Is Investigating Threats Made to Law Enforcement During Bundy Showdown*, Las Vegas Review-Journal (May 8,

"be made whole even once," *id.* at 21, "[b]ecause the Court of Claims may not entertain claims for declaratory and injunctive relief[2] . . . just as the [d]istrict [c]ourt may not compensate a temporary or permanent taking where damages exceed $10,000," *id.* at 17.

Roca Solida explains it is seeking injunctive relief (which the Claims Court cannot provide) in the district court, and only if injunctive relief is denied will it seek monetary compensation for the permanent loss of water (which, if the amount exceeds $10,000, the district court cannot provide) in the Claims Court. Appellant's Br. 21. It notes it has requested a stay in the Claims Court pending the outcome in the district court. *Id.* at 5; *see also* Appellant's App. 16.

In requesting relief that parallels the present case in important ways, the plaintiff in *Tohono* brought suit in

---

2014), http://www.reviewjournal.com/news/bundy-blm/sheriff-fbi-investigating-threats-made-law-enforcement-during-bundy-showdown. Such inflammatory language is inappropriate.

[2]  *See Tohono*, 131 S. Ct. at 1729 ("[T]he [Claims Court] has no general power to provide equitable relief against the Government or its officers."); *id.* at 1734 (Sotomayor, J., concurring) ("[A]n action seeking injunctive relief to set aside agency action must proceed in district court, but a claim that the same agency action constitutes a taking of property requiring just compensation must proceed in the [Claims Court]."); *Brady v. United States*, 541 Fed. App'x 991, 992 (Fed. Cir. 2013) (Plaintiff's "requests for declaratory and injunctive relief are also outside the jurisdiction of the Claims Court."); *Hoopa Valley Tribe v. United States*, 596 F.2d 435, 443 (Ct. Cl. 1979) ("[T]he Court of Claims has no jurisdiction of suits for injunctions or declaratory judgments.").

United States district court, alleging federal officials breached their fiduciary duty in managing tribal assets and requesting an accounting, i.e., equitable relief. *Tohono*, 131 S. Ct. at 1727. In a simultaneous action before the Claims Court, the plaintiff sought money damages on the basis of allegations of "almost identical violations of fiduciary duty." *Id.*

Holding the Claims Court lacked jurisdiction pursuant to § 1500, the *Tohono* Court found irrelevant the fact that there was no "remedial overlap." *Id.* at 1728. Plaintiffs may not avoid the jurisdictional bar of § 1500, the Court stated, "by carving up a single transaction into overlapping pieces seeking different relief," such as equitable relief in the district court and damages in the Claims Court. *Id.* at 1730.

The Supreme Court in *Tohono* gave due consideration to Congressional intent, explaining the context and original purpose of the predecessor to § 1500. *Tohono*, 131 S. Ct. at 1728. It is true, as Roca Solida points out, that concurring and dissenting opinions in *Tohono* expressed views regarding Congressional intent that may have been contrary to those expressed by the majority. Justice Sotomayor, in a concurrence joined by Justice Breyer, read "[t]he legislative history [of § 1500 to] confirm[] Congress' intent to preclude requests for *duplicative relief.*" *Tohono*, 131 S. Ct. at 1736 (Sotomayor, J., concurring) (emphasis added). Justice Ginsburg stated in her dissent that "[w]hen Congress bars a plaintiff from obtaining complete relief in one suit . . . and does not call for an election of remedies, Congress is most sensibly read to have comprehended that the operative facts give rise to two discrete claims." *Id.* at 1739 (Ginsburg, J., dissenting). These concurring and dissenting opinions, of course, do not negate the binding nature of the majority opinion.

### B. The Pre-*Tohono* Judicial Interpretation of § 1500 on Which Roca Solida Relies Is No Longer Good Law

Roca Solida relies on this court's decision in *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed. Cir. 1994), for the proposition that "it would not be sound policy to force plaintiffs to forego monetary claims in order to challenge the validity of Government action, or[, conversely,] to preclude challenges to the validity of Government action in order to protect a constitutional claim for compensation." Appellant's Br. 24 (quoting *Loveladies*, 27 F.3d at 1556).

As the Claims Court correctly noted, however, *Loveladies*' holding that § 1500 does not preclude Claims Court jurisdiction so long as the "pending action in another court seeks distinctly different relief," *id.* at 1549, was effectively overruled by *Tohono*. It provides no solace to Roca Solida.

### C. Policy Considerations Do Not Allow This Court to Ignore Binding Precedent

In a related argument, Roca Solida asserts "'actions seeking different forms of relief that Congress has made available exclusively in different courts are not [redundant]'" and therefore not inefficient. Appellant's Br. 25 (quoting *Tohono*, 131 S. Ct. at 1737 (Sotomayor, J., concurring)). Similarly, it notes "'federal courts have ample tools at their disposal, such as stays, to prevent . . . burdens [such as parallel discovery]'" that might arise from co-pending suits. *Id.* (quoting *Tohono*, 131 S. Ct. at 1737 (Sotomayor, J., concurring)). However, just as the concurring and dissenting opinions in *Tohono* do not diminish the binding nature of the *Tohono* majority opinion, neither do their policy considerations.

In effect, Roca Solida argues the Supreme Court's majority opinion was erroneous and unsound policy. However, "this is not the appropriate forum" in which to advance such an argument, "[h]owever well or ill-founded [it] may be." *Korczak v. United States*, 124 F.3d 227, 1997 WL 488751, at *2 (Fed. Cir. 1997) (unpublished table decision). "We are duty bound to follow the law given us by the Supreme Court unless and until it is changed." *Id.*

D. *Tohono* Has Not Been Effectively Distinguished

Roca Solida also attempts to distinguish *Tohono* on the basis that *Tohono* did not involve a statute of limitations because Congress through special legislation has provided "the statute of limitations on Indian trust mismanagement claims shall not run until the affected tribe has been given an appropriate accounting." *Tohono*, 131 S. Ct. at 1731. By contrast, Roca Solida asserts, its takings claims based on the diversion of water beginning in August 2010 would begin to be barred in August 2016 by the six-year statute of limitations generally applicable to all claims before the Claims Court. *See* 28 U.S.C. § 2501.

However, the Supreme Court in *Tohono* explicitly considered and rejected the argument that § 1500 should be interpreted more flexibly where the limited and non-overlapping jurisdictions of the district court and Claims Court work a "hardship" on the plaintiff. It stated: "Even were some hardship to be shown [such as incomplete relief resulting from the running of a statute of limitations], considerations of policy divorced from the statute's text and purpose could not override its meaning." *Tohono*, 131 S. Ct. at 1731; *id.* at 1730 ("There is no merit to the Nation's assertion that the interpretation adopted here cannot prevail because it is unjust, forcing plaintiffs to choose between *partial remedies* available in different courts.") (emphasis added). Although Roca Solida argues this statement is dictum (because no statute of limitations

was at issue in *Tohono*), this court has previously recognized "the Supreme Court has made clear that the statutory language of § 1500 leaves no room to account for such hardship." *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1367 n.6 (Fed. Cir. 2012).

As Judge Taranto's concurring opinion indicates, the Supreme Court in *Tohono* did not explicitly address the situation where a plaintiff is prevented from asserting a right under the United States Constitution by the interplay between § 1500 and a statute of limitations. Although Roca Solida asserts it is being forced to "choose between: (1) tort damages and injunctive relief to stop ongoing and future constitutional violations [including First Amendment violations] . . . or (2) compensation for a 'taking' [under the Fifth Amendment]," Appellant's Br. 10, it concedes the statute of limitations will not run until August 2016, *id.* at 7 n.9. While the considerations and analysis presented in the concurring opinion may have merit, the constitutional question is not sufficiently ripe for review.

CONCLUSION

The Claims Court does not have jurisdiction over Roca Solida's claim because a similar claim remains pending in a United States district court, because the district court claim is based on "substantially the same operative facts" as those in the Claims Court proceeding, and because, under *Tohono*, it is irrelevant that the relief sought in each forum is nonoverlapping or would work a hardship in the form of incomplete relief. For these reasons, the decision of the Claims Court is

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

_____

**MINISTERIO ROCA SOLIDA,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2014-5058

_____

Appeal from the United States Court of Federal
Claims in No. 1:12-cv-00541-EDK, Judge Elaine Kaplan.

_____

TARANTO, *Circuit Judge*, concurring.

I agree that we should affirm the Court of Federal
Claims' dismissal of Roca Solida's Tucker Act case under
28 U.S.C. § 1500, based on the construction of that sec-
tion's language in *United States v. Tohono O'Odham
Nation*, 131 S. Ct. 1723 (2011). I join the court's opinion.
I do so, however, with the recognition that this applica-
tion of § 1500 may soon present a substantial constitu-
tional question about whether federal statutes have
deprived Roca Solida of a judicial forum to secure just
compensation for a taking; that avoidance of such consti-
tutional questions can sometimes support adoption of
statutory constructions that would otherwise be rejected;
that neither *Tohono* nor other authorities squarely ad-
dress § 1500's application when it raises the constitution-

al question lurking here; but that we need not pursue special-construction possibilities now—not just because the problem is not present at the moment, but because there may be avenues open to addressing the constitutional question if it arises in the dispute between Roca Solida and the government.

To summarize: The combination of three statutes—(1) § 1500 as construed in *Tohono*; (2) the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501, which is jurisdictional and not subject to general equitable tolling; and (3) the Little Tucker Act's $10,000 cap on just-compensation claims in district courts, 28 U.S.C. § 1346(a)(2)—threatens to deprive Roca Solida of the opportunity to secure complete relief for what (we must assume on the motion to dismiss) might be a taking of its property.  That is because the six-year period allowed for bringing a Tucker Act suit in the Court of Federal Claims (which is not limited by dollar amount) may well end before the § 1500 bar on doing so is lifted by completion of the Nevada district-court action.  But if that occurs, Roca Solida may have remedies.  One possibility, highly problematic but not foreclosed by today's decision, is invocation of the transfer statute, 28 U.S.C. § 1631, to transfer to the Court of Federal Claims (when the § 1500 bar ends) the takings claim Roca Solida timely filed in the district court, a claim broad enough to encompass Roca Solida's full claim for just compensation for a permanent or temporary taking.  If a full just-compensation remedy is statutorily unavailable, the district court may be entitled to adjudicate the permanent-taking claim and order return of the property if it finds a taking.  And if restorative relief is incomplete, as by leaving a temporary taking uncompensated, questions would arise about whether tolling of the statute of limitations might be recognized to avoid unconstitutionality or whether the combination of remedy-depriving statutes is unconstitutional as applied.

It is hardly implausible that the two-forum water-diversion dispute here will arrive at a point at which those issues will have to be addressed if raised: according to the government, the six-year limitations period ends in August 2016, and neither party has said that the Nevada case is positively likely to end by then. Nevertheless, the troubling potential-loss-of-Fifth-Amendment-rights issues are at present contingent—they may not ripen: the Nevada case may be over by August 2016, and that case may definitively establish the non-existence of a taking that requires just compensation. Perhaps the likelihood that such issues will arise, here and more generally, would permit us to consider, in the present appeal, a constitutional-avoidance exception to § 1500's otherwise-required application. But I do not think it advisable to pursue that question now, partly because, uncertain and complex as they may be, there are at least some possibilities for Roca Solida to secure partial or complete relief even if the Nevada case is still blocking a suit in the Court of Federal Claims in August 2016. I therefore elaborate on the problems hovering on the horizon and possible remedial solutions to those problems.

A

Roca Solida has proceeded in what appears to be a sensible way, perhaps the only way possible under federal statutes, to try to secure complete judicial relief for the water diversion that it claims was unlawful on several grounds, including several constitutional grounds.

Roca Solida has made clear that its main aim has been to secure restoration of the diverted stream to the path it once took through Roca Solida's land. In district court, it has sought injunctive and declaratory relief from the government's diversion of the stream, and among its grounds it has invoked the First Amendment's Free Exercise Clause and the Fifth Amendment's Due Process Clause. But as long as the Tucker Act remedy for just

compensation is available in the Court of Federal Claims, Roca Solida may not invoke the Fifth Amendment's Takings Clause to obtain restoration of the water in district court, because the Fifth Amendment, insofar as it applies here, does not bar takings, only takings without just compensation. *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 127 (1974).[1] And Roca Solida could not bring a claim for water restoration in the Court of Federal Claims, whose Tucker Act jurisdiction, including particularly its takings-claim jurisdiction, is limited to monetary relief as relevant here. *See United States v. King*, 395 U.S. 1, 3 (1969); *see also Acadia Technology, Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006) (just-compensation claim assumes alleged taking itself was not wrongful; challenges alleging wrongfulness of alleged taking must be brought elsewhere).

Roca Solida has also sought just-compensation damages, both in district court and in the Court of Federal Claims. The damages claim in the district court would, at a minimum, address the alleged temporary taking that would come to an end if Roca Solida were to succeed in achieving its primary, restoration objective; and when filed, it was plausibly valued at no more than $10,000, the limit for district court jurisdiction under the Little Tucker Act. But the claim is written broadly enough to cover a claim of both permanent and temporary taking. At the

---

[1] Roca Solida has not argued in the Nevada case that the water diversion could be reversed by injunction on the Takings Clause ground that it was not for a "public use." *Cf. Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543 (2005) ("[I]f a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action.").

same time, Roca Solida brought the present Court of Federal Claims takings case under the Tucker Act. That claim would address the request for just compensation for a permanent taking, plausibly valued at more than $10,000, if the non-takings claims for restoration in the district court fail. It also could provide just compensation for a temporary taking if, though the water got restored, the passage of time were to raise the value of the temporary-taking claim to more than $10,000.

The Court of Federal Claims case would never need to be adjudicated if, for example, Roca Solida obtained restoration of the water in the district court and sought no more than $10,000 in just compensation for any uncured taking. *Smith v. Orr*, 855 F.2d 1544, 1553 (Fed. Cir. 1988). Accordingly, Roca Solida immediately asked the Court of Federal Claims to stay its Tucker Act case. But Roca Solida might not obtain restoration of the water in the district-court case, and even a temporary-taking claim might grow in value to more than $10,000 given that the stream diversion occurred in 2010. Should Roca Solida seek just compensation in excess of $10,000 for either a temporary or permanent taking, the Court of Federal Claims appears to be the exclusive judicial forum for obtaining it, at least if this court's conclusion in *Smith v. Orr*, 855 F.2d at 1552, about the loss of initially proper Little Tucker Act jurisdiction when the claim rises in value above $10,000 were applied broadly. *See Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1332 (Fed. Cir. 2004); *but cf.* pp. 12–13, *infra* (noting question about *Smith*'s scope and soundness).

Under 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The government contends that the takings claim accrued in August 2010. Oral Argument at 24:30–24:40, *Ministerio Roca Solida v. United States*, 2014-5058; *see John R. Sand & Gravel Co.*

*v. United States*, 457 F.3d 1345, 1357 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008).  Under that assumption, the six-year period ends in August 2016.  The Nevada case may well extend beyond that date.  In that event, applying § 1500 as construed in *Tohono* would block Roca Solida's ability to initiate an action in the Court of Federal Claims until the statute of limitations has run.

There would be no such bar if equitable tolling were available to suspend the running of the clock.  But the Supreme Court has recently held that it is not.  *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136–39 (2008);[2] *see FloorPro, Inc. v. United States*, 680 F.3d 1377, 1382 (Fed. Cir. 2012).  As a result, because Roca Solida is pursuing its constitutional and other claims for relief in district court—claims that it cannot bring and consolidate in the Court of Federal Claims—the combination of § 1500, § 2501, and § 1346(a)(2), under the governing general standards and considered by themselves, may soon eliminate Roca Solida's access to a judicial forum for obtaining just compensation for what may be a taking.

## B

A substantial constitutional question would be raised if federal statutes forced a claimant to choose between securing judicial just compensation for a taking of property and pursuing constitutional and other legal claims that challenge, and if successful could reverse, the underlying action alleged to constitute a taking.  *See Blanchette*, 419 U.S. at 148–49 (withdrawing the Tucker Act remedy, without a corresponding guarantee of just compensation, may "raise serious constitutional questions").  Although,

---

[2]    *John R. Sand* involved a takings claim, but there was no discussion in the Court's opinion of any contention that the plaintiff faced a statutory impediment to presenting its takings claim within the six-year period.

as a general matter, it is the sovereign's prerogative to "prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted," *Beers v. Arkansas*, 20 How. 527, 529 (1858), the Fifth Amendment's Takings Clause has long been treated as guaranteeing a just-compensation remedy, not just an underlying right. Notably, in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, the Supreme Court rejected the government's argument that "the prohibitory nature of the Fifth Amendment . . . combined with principles of sovereign immunity, establishes that the Amendment itself is only a limitation on the power of the Government to act, not a remedial provision." 482 U.S. 304, 316 n.9 (1987). The Court explained that, to the contrary, precedent "make[s] clear that it is the Constitution that dictates the remedy for interference with property rights amounting to a taking." *Id.*; *see also* Richard H. Fallon, Jr. et al., *Hart & Wechsler's the Federal Courts and the Federal System* 718–19 (6th ed. 2009) (characterizing the Takings Clause as establishing a constitutional remedy).[3]

Other, more general authorities may have a bearing on the constitutional questions that may arise in August 2016. One line of authority concerns congressional deprivation of judicial relief for constitutional violations. The Court has repeatedly noted "the 'serious constitutional question' that would arise if a federal statute were con-

---

[3]    In a related vein is the longstanding exception for unconstitutional takings to the general rule that a statutory waiver of sovereign immunity is required to permit an official-capacity suit against a federal officer to restore property to its rightful owner. *Malone v. Bowdoin*, 369 U.S. 643, 647–48 (1962); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 696–97 (1949); *United States v. Lee*, 106 U.S. 196, 221–23 (1882).

strued to deny any judicial forum for a colorable constitutional claim." *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132 (2012); *Webster v. Doe*, 486 U.S. 592, 602–03 (1988). Another line of authority concerns the impermissibility of imposing "unconstitutional conditions" in various circumstances, including those involving alleged takings. The Court has explained that it has held "in a variety of contexts that 'the government may not deny a benefit to a person because he exercises a constitutional right.'" *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013). *Cf. Simmons v. United States*, 390 U.S. 377, 394 (1968) (in particular criminal-case context, deeming it "intolerable that one constitutional right should have to be surrendered in order to assert another").

I do not address how those and perhaps other authorities would apply if federal statutes were to preclude Roca Solida from obtaining a judicial award of just compensation for a taking because it pursued its constitutional and other legal claims in district court. Rulings in this area have often been tightly bound to case-specific facts, as established by a fully developed factual record. In particular, I do not address whether it is relevant that Roca Solida first sued in August 2012, two years after the August 2010 completion of the water-diversion project. I also put aside, for purposes of this opinion, the possibility that § 1500 would not have applied if Roca Solida had filed in the Court of Federal Claims before, rather than two days after, filing in district court.[4]  I conclude only

---

[4]  I put that aside because the government can hardly contend that Roca Solida could easily have avoided § 1500 difficulties by reversing the order of filing, although *Tecon Eng'rs, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965), supports such a contention. *See Brandt v. United States*, 710 F.3d 1369, 1379 n.7 (Fed. Cir. 2012)

that serious questions are raised by the apparent combined effect of § 1500, § 2501, and § 1346(a)(2), under their general governing interpretations, on what may well be Roca Solida's situation a year and a half from now.

The substantiality of the constitutional questions raises a natural follow-on question: whether § 1500 should be given a distinctively narrow application when necessary to avoid those questions. Statutes have sometimes been given constructions as applied to particular situations to avoid substantial constitutional problems, even when other considerations, including textual considerations, pointed the other way. *See, e.g., Bond v. United States*, 134 S. Ct. 2077, 2088–90 (2014); *Jinks v. Richland County*, 538 U.S. 456 (2003); *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533 (2002); *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 200 (1979).

C

Neither the Supreme Court nor this court has addressed whether § 1500 should be applied in such circumstances. *Tohono* did not involve a takings claim (it involved a breach-of-trust claim) under the Tucker Act.

---

(*Tecon* "remains the law of this circuit"; holding that a case was not "pending" during the time between the district court's judgment and the filing of a notice of appeal). The government has argued that *Tecon*'s order-of-filing rule is no longer good law, invoking *Tohono*, 131 S. Ct. at 1729–30, and *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1023 (Fed. Cir. 1992) (en banc). Brief for the United States at 33–36, *Brandt v. United States*, 2012 WL 1943736 (Fed. Cir. 2012); United States' Combined Petition for Panel and En Banc Rehearing, at 9–14, *Brandt*, 710 F.3d 1369 (Jun. 10, 2013) (No. 12-5050), *denied*, Aug. 19, 2013; *see Brandt*, 710 F.3d at 1380–82 (Prost, J., concurring) (*Tecon* should be overruled).

*Keene Corp. v. United States*, 508 U.S. 200 (1993), did involve a takings claim among the Tucker Act claims at issue, but the court did not have before it or address a contention that applying § 1500 to bar the Tucker Act suit, in combination with the statute of limitations, § 2501, might force the claimant to choose between giving up a just-compensation claim and giving up other legal claims, including other constitutional claims. Indeed, the government in *Keene*, addressing the possibility that a Tucker Act claim might be untimely when the § 1500 bar ended, represented that "equitable tolling of the statute of limitations may be available" for a plaintiff with such a claim. Brief for the United States at 40–41, *Keene*, 508 U.S. 200 (No. 92-166), 1993 WL 290106, at *40–41. Only fifteen years later did the Court hold, at the government's urging, that § 2501 is jurisdictional and thus not susceptible to equitable tolling. *John R. Sand*, 552 U.S. at 139.

Other Supreme Court decisions likewise do not address whether § 1500 might properly be read not to bar a Tucker Act suit when a contrary holding, in combination with the statute of limitations, would force the claimant to choose between giving up a just-compensation claim and giving up other legal claims, including other constitutional claims. *See Matson Nav. Co. v. United States*, 284 U.S. 352, 354 (1932) (Court of Claims action founded upon breach of contract); *Corona Coal Co. v. United States*, 263 U.S. 537, 539 (1924) (Court of Claims action founded upon act of Congress); *In re Skinner & Eddy Corp.*, 265 U.S. 86, 91 (1924) (Court of Claims action founded upon breach of contract). Nor, evidently, is the issue decided in rulings by this court and its predecessors.

### D

The foregoing constitutional questions, and their potential consequences for construing § 1500, do not have to be faced at present. The scenario making the constitutional questions seemingly serious ones may not arise.

And as a general matter, a "'longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.,* 485 U.S. 439, 445 (1988)). Although application of that principle sometimes requires a judgment call about the degree of contingency involved, the appropriateness of applying it here is reinforced by the conclusion that, even with the dismissal under § 1500, Roca Solida has several possible (not to say certain or clear) paths to seeking partial or complete judicial relief.

One possible path to explore can be seen by broadening the statutory focus, beyond § 1500, § 2501, and § 1346(a)(2), to include the transfer statute, § 1631—but § 1500 might well block that path. Putting § 1500 to one side for a moment, it may be that § 1631 would allow the transfer to the Court of Federal Claims of the takings claim filed in district court in 2012, once that claim rose in value to more than the $10,000 allowed under the Little Tucker Act; and if so, the resulting Court of Federal Claims action would be treated, for statute-of-limitations purposes, as if it had been filed in 2012. 28 U.S.C. § 1631 ("[w]henever" a court "finds that there is a want of jurisdiction," it "shall, if it is in the interest of justice, transfer such action" to a court "in which [it] could have been brought at the time it was filed," where it "shall proceed as if it had been filed in . . . [the transferee court] on the date upon which it was actually filed in . . . [the transferor court]"). Although transfers are not obligatory, avoidance of statute-of-limitations problems (which a re-filing after a dismissal might present) is "[a] compelling reason for transfer," *Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1374 (Fed. Cir. 2005), as is the interest in providing the constitutionally guaranteed judicial forum for a claim for just compensation for a taking.

But § 1500 creates a problem for the transfer possibility. We have held that, in the transfer situation, (a) § 1631 requires asking whether § 1500 would have blocked the transferred claim if it had been filed in the Court of Federal Claims at the same time the untransferred claims were filed in the district court and (b) § 1500 applies to simultaneously filed claims. *See United States v. County of Cook*, 170 F.3d 1084, 1090–91 (Fed. Cir. 1999); *see also Griffin v. United States*, 590 F.3d 1291, 1293 (Fed. Cir. 2009); *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004). Under that approach, a transfer of the takings claim here, even after termination of the rest of the Nevada action, would seem to raise this question: would § 1500 have barred the filing of the takings claim in the Court of Federal Claims in 2012 simultaneously with the filing in the Nevada district court of all the claims currently in the Nevada case except the takings claim? That is not the question presented to us today, but the *Tohono* standard appears to be a significant obstacle to Roca Solida's obtaining a favorable answer.[5]

Another possible path is through the district court's adjudication of the full takings claim, regardless of amount—but this path itself contains an apparent obstacle, albeit one of uncertain breadth and solidity. As to the possibility: Longstanding precedent holds that, in general, satisfaction of statutory jurisdictional prerequisites is to be "tested by the facts as they existed when the action is brought." *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957);

---

[5]    Pursuit of a transfer might also raise other issues, such as how to preserve the takings claim's transferability—perhaps severance and a stay of the takings claim in district court, *see* Fed. R. Civ. P. 21—until the rest of the Nevada action is no longer pending.

*see Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (the "time-of-filing rule is hornbook law"); *Keene*, 508 U.S. at 209. Under that principle, it may be that Roca Solida's takings claim in the district court, proper when filed because plausibly then valued at no more than $10,000, can still be adjudicated in district court and support an award of more than $10,000 if warranted by post-filing events.

An obstacle to that conclusion, however, is this court's decision in *Smith v. Orr*, which concluded, in the context of an employee's claim for backpay, that a district court would lose Little Tucker Act jurisdiction once the amount claimed "accrued to greater than $10,000." 855 F.2d at 1553. Perhaps *Smith v. Orr* should be limited to barring claims, such as backpay claims based on fixed salary payments, where the non-contingent facts alleged make it effectively certain from the outset that the amount at issue will exceed $10,000. *Cf. St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) (Regarding one jurisdictional minimum, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). *Smith v. Orr* itself cited only backpay cases in reaching its conclusion, 855 F.2d at 1553 nn. 42–45, 47, and we have not applied *Orr* outside those circumstances. *See Simanonok v. Simanonok*, 918 F.2d 947, 950–51 (Fed. Cir. 1990). Moreover, a leading scholar, discussing *Smith v. Orr*, has stated that "the proposition that a court may take and then lose trial jurisdiction due to the mere passage of time may be questioned in light of" *Keene* and *Grupo Dataflux*. Gregory C. Sisk, Litigation With The Federal Government 238 (4th ed. 2006).

Alternatively, or in addition, perhaps a special constitutional-avoidance tolling of the § 2501 statute of limitations is justified, despite the general absence of equitable tolling. There may be an argument for such tolling on a

ground that borrows from the essential principles stated in decisions allowing injunctive relief if the Tucker Act remedy has been withdrawn: "it cannot be doubted that the [Tucker Act] remedy to obtain compensation from the Government *is as comprehensive as the requirement of the Constitution*" and "the true issue is whether there is sufficient proof that Congress intended to *prevent* such recourse." *Blanchette*, 419 U.S. at 127, 126 (internal quotation marks omitted; emphases as in *Blanchette*). It is open to serious question whether Congress intended to prevent just-compensation relief for a taking through the combination of § 1500, § 2501, and § 1346(a)(2). If that combination precludes such relief, even when also considering the transfer statute, it might be that the combination should be held unconstitutional as applied, allowing suit for more than $10,000 either in district court or in the Court of Federal Claims when the § 1500 bar ends.

Aside from the possibility of an as-applied constitutional invalidation, if Roca Solida eventually lacks statutory means of obtaining just compensation in court, it may have a forward-looking judicial remedy should it prove that its property was taken. Notably, it may be that the district court can entertain a takings claim to restore the diverted water if the just-compensation remedy is not available. The unavailability of a just-compensation remedy generally allows otherwise-authorized litigation to obtain forward-looking curative relief against an alleged taking. *See Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2063 (2013); *Eastern Enterprises v. Apfel*, 524 U.S. 498, 521–22 (1998) (plurality opinion) (where monetary relief against the government is not "an available remedy," equitable relief for a taking is "within the district courts' power"); *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978) (affirming the district court's subject-matter jurisdiction under 28 U.S.C. § 1331(a) to entertain a request for a declaratory judgment that, because the Price-Anderson

Act "does not provide advance assurance of adequate compensation in the event of a taking, it is unconstitutional"). *See also supra* p. 7 n.3.[6] The district court may consider whether such restoration relief is available under those authorities if Roca Solida can no longer maintain a Tucker Act case in August 2016.

The important and deeply rooted interest in the effectiveness of a constitutional guarantee—here, of a just-compensation remedy for a taking—would be well served if the answers to the how-to-secure-relief questions turned out to be clear should they have to be faced. Unfortunately, it is easy to imagine that the costs, uncertainties, and delays of litigating over forum, procedure, and remedies will be substantial—burdens addressed, though probably not fully lifted, by the availability of interest as a part of a just-compensation award (*see Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10–11 (1984)) and the availability of attorney's fees (*see* 42 U.S.C. § 4654(c); *Bywaters v.*

---

[6] Apart from the *Malone/Larson/Lee* authorization of injunctive relief, the Administrative Procedure Act waives sovereign immunity for challenges to federal agency action by certain persons "seeking relief other than money damages," 5 U.S.C. § 702, and generally authorizes district courts to "set aside agency action . . . found to be . . . contrary to a constitutional right," § 706, when the challenged action is "final agency action for which there is no other adequate remedy in a court," § 704. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2204 (2012); *Bennett v. Spear*, 520 U.S. 154, 175 (1997). The preclusion of an adequate Tucker Act damages remedy might satisfy the § 704 precondition. The government has not suggested that its position in this two-forum dispute is that the employee who executed the diversion project acted beyond her statutory authority.

*United States*, 670 F.3d 1221 (Fed. Cir. 2012)).  Complexity, lack of clarity, splitting of jurisdiction, and § 1500's rigid rule are features of the current legal landscape at issue here, and the practical effect of those features may easily be to cause loss or abandonment of meritorious constitutional claims.  But because there is some possibility that Roca Solida will have remedies available if needed, I conclude that we should apply § 1500 as construed in *Tohono* rather than grapple more definitively with the constitutional questions that are not yet certain to arise in this dispute.